NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ACS HR SOLUTIONS, LLC, AS SUBROGEE OF ENTERGY CORPORATION RETIREMENT PLAN FOR NON-BARGAINING EMPLOYEES,<br><br>Plaintiffs,<br><br>v.<br><br>HOWARD BONDS,<br><br>Defendant. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 10-cv-4179 (DMC)(MF) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Motion of Defendant Howard Bonds ("Defendant") for Summary Judgment, and upon the Motion of Plaintiff ACS HR Solutions, LLC, as Subrogee of the Entergy Corporation Retirement Plan for Partial Summary Judgment. ECF Nos. 30, 35. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's Motion is **denied** and that Plaintiff's Motion is **granted**.

I.   BACKGROUND[1]

This is an action to recover employee benefits allegedly paid to an individual by mistake. Plaintiff ACS HR Solutions, LLC ("ACS" or "Plaintiff") is the subrogee of the Entergy Corporation

---

[1] The facts of this Background section are taken from the parties' individually filed Statements of Material Facts not in Dispute.

("Entergy"), which is the plan administrator of the Entergy Corporation Retirement Plan for Non-bargaining Employees (the "Plan"). Def.'s Statement of Material Facts Not in Dispute ("Def.'s Statement") ¶¶ 1, 2, ECF No. 30; Pl.'s Statement of Material Facts Not in Dispute ("Pl.'s Statement") ¶¶ 1, 2, ECF No. 35-1. Plaintiff has sued Defendant Howard Bonds ("Defendant"), a retired forester who raises and sells cattle for a living, claiming that he has improperly received benefits under the Plan. Def.'s Statement ¶ 5.

James Bonds was an employee of Entergy Corporation or its predecessors, and was a participant in the Plan. Def.'s Statement ¶ 8; Pl.'s Statement ¶ 3. Upon the death of James Bonds, his wife, Martha Bonds, was to receive survivor benefits under the Plan in the amount of $1,140.05 per month until her death. Def.'s Statement ¶ 7; Pl.'s Statement ¶ 3. Following the death of James Bonds, Martha Bonds married Defendant Howard Bonds on October 5, 1996. Def.'s Statement ¶¶ 6,7; Pl.'s Statement ¶ 4. Martha Bonds continued to receive survivor benefits under the Plan during this time. Def.'s Statement ¶ 9; Pl.'s Statement ¶ 5. Martha Bonds died in late July 2003, after seven years of marriage to Defendant Howard Bonds. Def.'s Statement ¶¶ 6, 10; Pl.'s Statement ¶ 5.

Following Martha's death, Defendant continued to receive payments from the Plan in the amount of $1,140.05 per month, from August 2003 until early 2008. Def.'s Statement ¶¶ 12, 13; Pl.'s Statement ¶ 6. In a pair of letters sent in 2003, the Plan informed Defendant that he was entitled to receive benefits under the Plan after the death of Martha Bonds. Def.'s Statement ¶¶ 13, 14; Pl.'s Statement ¶ 7. In January 2008, the Plan determined that the payments made to Defendant had

actually been in error, informed Defendant of this discovery, and ceased making further payments.[2] Def.'s Statement ¶¶ 24-26; Pl.'s Statement ¶ 9. The Plan demanded that Defendant repay the total benefits paid to him, but Defendant refused to do so. Def.'s Statement ¶ 27; Pl.'s Statement 10.

Plaintiff, as subrogee of the Plan, filed the present Complaint on August 16, 2010, seeking repayment of a principal amount of $78,722.41 plus interest, the imposition of a constructive trust and/or equitable lien in that amount, equitable restitution in that amount, pre- judgment and post-judgment interest, and attorney's fees. Compl. 4-5, ECF No. 1. Defendant filed his Motion for Summary Judgment on January 31, 2012. Plaintiff filed its own Motion for Partial Summary Judgment on that same day. On February 21, 2012, both parties filed Opposition to the other's Motion. ECF Nos. 36, 37. Neither party filed a reply. The matter is now before this Court.

## II. STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also

---

[2] Due to a delay in processing the termination of payments, the play made two additional payments to Defendant during this time. Pl.'s Statement ¶ 9.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III. DISCUSSION

Plaintiff seeks Partial Summary Judgment for its claim for restitution, noting that the other relief sought requires a "fact-sensitive" inquiry, and is not appropriate for summary resolution. Pl.'s Mot. Br. 4 n.2, ECF No. 35-3. Plaintiff's Motion relies heavily on Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 F.2d 1176 (3d Cir. 1991), a factually similar case to the matter presently before this Court. In Luby, a plan participant died leaving two different beneficiary cards on file, with each card naming a different beneficiary. Id. at 1179. The first card, signed by Luby in 1968, designated his wife as beneficiary, while the second card, filed in 1987, designated his girlfriend. Id. The fund paid benefits to the participant's girlfriend. Id. The participant's wife filed a complaint for wrongful denial of death benefits against the girlfriend, the fund and its administrator, and the fund filed a cross-claim for restitution against the girlfriend in the event the wife prevailed in her suit. Id. In deciding the appeal from the District Court, the Third Circuit recognized that it had previously upheld the right of employers to seek restitution for mistaken overpayments to ERISA plans, and went on to hold "that an ERISA fund itself should receive the

same equitable remedy to recover mistaken payments out of the corpus of the trust." Id. at 1186 (citing Plucinski v. I.A.M. National Pension Fund, 875 F.2d 1052 (3d Cir. 1989)). The Third Circuit went on to affirm the District Court's holding that the fund's negligence was not a defense, because "under the federal common law of unjust enrichment, restitution of a mistaken payment is permitted even if payment was caused by the negligence of the party seeking restitution." Id. Plaintiff notes the obvious factual similarities between this case and Luby, and argues that under federal common law, as discussed in Luby and Plucinski, Plaintiff is entitled to restitution for the amounts mistakenly paid to Defendant.

Defendant advances two arguments in support of his Motion, and reiterates those arguments in Opposition to Plaintiff's Motion. First, Defendant argues that the Plan cannot demonstrate the existence of specifically identifiable funds in Defendant's possession that are traceable to payments made by the Plan over the period in question. Def.'s Mot. Br. 3; Def.'s Opp'n Br. 1. Defendant's argument relies heavily on two relatively recent Supreme Court decisions. Defendant cites to Great-West Life and Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), for the proposition that "where the overpayment or improper payment is no longer in the possession of a plan beneficiary, it has been held that an ERISA claim for 'appropriate equitable relief' cannot be maintained." Def.'s Mot. Br. 5. Defendant states that the Supreme Court later clarified this holding, when it held in Sereboff v. Atlantic Medical Services, Inc., 547 U.S. 356 (2006) that ERISA's "appropriate equitable relief" provision "provides for reimbursement when the plan seeks recovery through a 'constructive trust or equitable lien on a specifically identified fund not on the [plan beneficiary's] assets generally.'" Def.'s Mot. Br. 5.

Relying on Knudson and Sereboff, Defendant argues that '[i]n the present case, all of the

funds paid to Defendant prior to the demand for repayment were spent by Bonds on his business or personal items." Def.'s Mot. Br. 5. Defendant states that for this reason, no identifiable sum of money attributable to the pension plan payments remains in the joint account owned by Martha and Howard Bonds. Def.'s Mot. Br. 5. Further complicating matters, according to Defendant, is the fact that prior to receipt of the funds, there was already over forty thousand dollars in the joint account, and at the time Plaintiff sought reimbursement, there remained only approximately eight thousand dollars in the joint account. Def.'s Mot. Br. 5. Defendant thus states that "[t]here is no way of knowing how much of that balance is attributable to the pension payments made and how much represents the previous balance in 2003 prior to the pension payments." Under Defendant's reading of Knudson and Sereboff, Plaintiff is therefore barred from seeking restitution since the overpaid amount is no longer in Defendant's accounts, and the funds sought cannot be specifically traced to what remains in Defendant's accounts and property.

     Caselaw thoroughly applying the traceability rule of Knudson is fairly sparse in this Circuit, especially in the circumstances presented here, where a fund seeks to trace assets improperly distributed to a non-beneficiary. Looking beyond this Circuit to find other applications of the Knudson traceability rule in similar circumstances leads this Court to conclude only that such application is treacherous at best. For example, the Southern District of New York, applying the logic of Knudson in the field of Social Security benefits, found a plaintiff insurance company entitled to restitution where it overpaid the defendant. The Court considered the defendant's argument, as made here, that the funds were not traceable as required by Knudson, but turned this argument aside, stating "Defendant has received income that is totally traceable to the funds belonging to [plaintiff]. That she may have commingled those funds with other money which she spent should not limit a

Court of Equity from ordering equitable restitution." Unum Life Ins. Co. of America v. Lynch, No. 42006 WL 266562, at *3 (S.D.N.Y. Jan. 31, 2006).  By contrast, the District Court of Maine examined an action requiring the Court to trace an amount sought on a winding path leading through a firm's client trust account, to its operating account, to its bank account, back to the operating account, and if necessary, through payroll tax accounts.  Mank v. Green, 323 F.Supp.2d 115, 126 (D.Me. 2004).  The Court determined that under these circumstances, "the funds at issue can scarcely be described as 'particular' or 'clearly' traceable." Id.

In this instance, Plaintiff has the better of the traceability argument.  Plaintiff and Defendant agree that the funds at issue had been used to pay business expenses such as feed, fertilizer, tractors, pasture rent, accountant's fees and taxes, and that income from Defendant's business, enhanced by those assets, has been deposited into Defendant's accounts.  Accordingly, the Court is sufficiently convinced that the funds improperly given to Defendant are fairly traceable through Defendant's accounts, equipment, and real property.  The fact that some of these funds have been co-mingled with funds not traceable to the improper payments does not destroy Plaintiff's case for restitution.

In his second argument, Defendant contends that the letters sent by the Plan in 2003, which informed Defendant that he was entitled to the benefits received, leave Plaintiff equitably estopped from seeking any restitution.  Def.'s Mot. Br. 8.  Defendant argues that "Entergy made two independent representations to him which were spaced months apart that he was entitled, as Martha's putative beneficiary, to the continued receipt of the Entergy pension."  Def.'s Mot. Br. 8-9. Defendant thus argues that, given the passage of time between these representations and the eventual demand for repayment, "it is simply unjust to demand restitution especially given the fact that ht principal fault lies directly with Entergy in not discovering its error sooner."  Def.'s Mot. Br. 9.

Generally, to succeed on the claim of equitable estoppel, Defendant must show a material misrepresentation, reliance, and damages. Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1319 (3d Cir.), cert. denied 501 U.S. 1232 (1991).  Further, such a claim is available in ERISA matters only under "extraordinary circumstances." Id. at 1318-19.  In applying the extraordinary circumstances requirement, the Third Circuit has not set rigid parameters. Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1553 (3d Cir. 1996).  Generally, though, cases finding extraordinary circumstances have done so in instances of fraud or similarly inequitable conduct, in instances where there has been a "network of misrepresentations that arises over an extended course," or in instances of vulnerability of particular plaintiffs. Id.  None of these circumstances are present.  This wasn't a case of fraud or a "network of misrepresentations."  Rather, Defendant's claim relies only on two letters in which Plaintiff negligently told Defendant that he was entitled to benefits.  Further, Defendant has not shown that he is a particularly vulnerable party.  Finally, Defendant's Opposition papers also appear to suggest that Plaintiff's negligence provides Defendant with an equitable defense.  As the Third Circuit has noted, however, a fund's negligence in these matters is not a defense. Luby, 944 F.2d at 1186.  Accordingly, Defendant's claim for equitable estoppel fails.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **denied**, and Plaintiff's Motion for Partial Summary Judgment is **granted**.  An appropriate Order accompanies this Opinion.

      S/ Dennis M. Cavanaugh
      Dennis M. Cavanaugh, U.S.D.J.

Date:      August   22 , 2012
Orig.:      Clerk
cc:      All Counsel of Record
      Hon. Mark Falk, U.S.M.J.
      File